IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PAUL E. PROVOST, JR.

   Petitioner,

v.               Civil Action No. 1:10-cv-758-RGA

INTRAFUSION HOLDING
CORPORATION,

   Respondent.

## MEMORANDUM OPINION

Bruce W. McCullough, Esq., Bodell Bove LLC, Wilmington, DE, Counsel for Petitioner.

Lewis H. Lazarus, Esq., Corinne Elise Amato, Esq., Morris James LLP, Wilmington, DE; Sephen Hackney, Esq., Martin L. Roth, Esq., Kirkland & Ellis LLP, Chicago, IL, Counsel for Respondent.

March __, 2013

1

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is a Motion to Vacate Arbitration Award (D.I. 7) filed by Petitioner Paul E. Provost, Jr., a Cross-Motion to Confirm Arbitration Award (D.I. 15) filed by Respondent Intrafusion Holding Corporation, and associated briefing (D.I. 16, 17, 20). For the reasons discussed, the Motion to Vacate is denied, and the Cross-Motion to Confirm is granted.

## BACKGROUND

Provost and Intrafusion agreed to a sale of Provost's company, intraFUSION ("the Company") to Intrafusion and other companies, including Lake Capital, pursuant to a Unit Purchase Agreement ("UPA") dated July 15, 2008. (D.I. 7-1 at 21-29). The UPA defined how the Company's EBIDTA[1] was to be calculated over the twelve month Performance Period after the sale. Provost disputed Intrafusion's EBITDA calculation and provided his own, which would merit a Performance Payment and Performance Bonus. Pursuant to the UPA, the parties submitted the dispute to arbitration.

In September 2010, the parties contacted Deloitte LLP to solicit arbitrators. Deloitte provided five candidates; the parties each struck two, ranked the remaining three, and chose the arbitrator with the lowest aggregate score. The parties each ranked Gerald L. Yarnall ("the Arbitrator") as their top candidate. Provost, through counsel, submitted relevant party names for a conflicts check, including Lake Capital, and the Arbitrator represented neither he nor Deloitte had any conflicts. (D.I. 7-2 at 2, 6). The parties' list did not include Paul Yovovich, president of Lake Capital.

The parties engaged the Arbitrator and executed an engagement letter acknowledging

---

[1] "Earnings before interest, tax, depreciation and amortization."

2

Deloitte's conflicts check based on the names the parties provided. (D.I. 16-1 at 99). The parties agreed that Deloitte was under no obligation to update its conflicts search or identify other relationships or interests with the parties. *Id.* The parties also acknowledged that counsel engaged by any party or by the Arbitrator may have in the past represented or opposed, and may currently or in the future represent or oppose, the Arbitrator, Deloitte, its affiliates, or their personnel. *Id.*

The Arbitrator issued the Arbitration Award on June 1, 2012, finding the Company's EBIDTA during the Performance Period did not merit a Performance Payment or Performance Bonus. (D.I. 7-1 at 2-19). After the Award was issued, Provost wrote the Arbitrator asking for further disclosure of potential conflicts, including personal and business relationships between Deloitte, its affiliates, and its employees, and the Arbitrator, and Lake Capital, its principals and their families. (D.I. 7-2 at 15-17). The Arbitrator did not respond.

## PARTIES' CONTENTIONS

Provost contends the Arbitrator failed to disclose the following "personal conflicts":

1. Yovovich's wife, Mary Yovovich, was employed as a CPA by Deloitte;

2. Yovovich sits on a board of trustees with Gary Levin, a partner and national leader of Deloitte's Forensic & Dispute Services department, in which the Arbitrator works;

3. The Arbitrator's daughter and Yovovich's daughter were both scholarship nominees of the Kappa Alpha Theta Foundation, at different colleges, and were listed as such in organization materials in the same year;

4. The Arbitrator and his wife, and Yovovich and his wife, are listed as donors to the Kappa Alpha Theta Foundation for the same year; and

5. Deloitte, Yovovich, and a principal of Lake Capital each donated to Chicago's Olympics bid and may have attended a related cocktail party.

Provost contends the Arbitrator failed to disclose conflicts created by former Deloitte employees working at Lake Capital and Intrafusion:

6. Intrafusion's Robert Monahan, who Provost alleges "led [Intrafusion] in the purchase of the Company," was formerly Regional Group Leader for a group at Deloitte's Chicago office;

7. Lake Capital's Michael Latiner, former Head of Business Development, worked at Deloitte's Chicago office;

8. Lake Capital owned Archstone Consulting, which was comprised of approximately thirty former Deloitte employees, and whose CEO was former global lead partner of Deloitte Consulting; and

9. Lake Capital owned 94% of Huron Consulting Group, whose CEO is a former Deloitte professional and was publicly quoted as maintaining relationships with Deloitte. A Huron executive was a former senior manager at Deloitte Consulting.

Provost contends the Arbitrator failed to disclose Deloitte's business relationships with Yovovich:

10. Yovovich was a director of Advance Ross Corporation, for which Deloitte provided audit and accounting services;

11. Yovovich was a director of APAC Customer Services, Inc., whose CEO was a former Deloitte partner;

12. Yovovich was a director of May & Speh, Inc., whose HR manager was formerly National Director of Human Resources for Deloitte;

13. Yovovich was a director of 3Com Corporation, which hired Deloitte as its accounting firm; and

14. Yovovich was a director and trustee for Van Kampen Series Fund, Inc., which hired Deloitte as its accounting firm.

Finally, Provost contends the Arbitrator failed to disclose that Intrafusion's counsel, Kirkland and Ellis LLP, identifies Deloitte as a client. (D.I. 7 at 14-16). Provost contends these

4

conflicts manifested themselves in the Arbitrator's fees, verdict, and basing the verdict on the four corners of the UPA even though the Arbitrator granted Provost's request to engage in discovery to develop parol evidence, which Provost now contends was very costly to him.

Intrafusion argues that none of Provost's asserted conflicts give rise to a reasonable impression of evident partiality or corruption. Intrafusion also asserts that by accepting the Arbitrator's conflicts investigation and representation, Provost waived the ability to challenge the Arbitrator's conflicts disclosures, which are not inconsistent with Provost's asserted conflicts in any case.

## DISCUSSION

### A. Legal Standard

"When parties move to confirm or vacate an arbitration award, the court's function in confirming or vacating a commercial arbitration award is severely limited. Arbitration awards are set aside only in very unusual circumstances, and there is a strong presumption in favor of the arbitration award." *Millennium Validation Services, Inc. v. Thompson*, 2006 WL 3159821, *4 (D. Del. 2006) (internal citations omitted).

Under the Federal Arbitration Act, a federal district court may vacate an arbitration award in the following circumstances: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption of the arbitrator; (3) the arbitrator refused to postpone the hearing despite sufficient cause shown, refused to hear material evidence, or prejudiced the rights of a party through other behavior; or (4) the arbitrator exceeded or so imperfectly executed his power that a mutual, final, and definite award was not made. *Id.*; 9 U.S.C. § 10. To vacate an award based on an arbitrator's evident partiality, the challenging party

must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration; this requires proof of circumstances "powerfully suggestive of bias." *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994).

### B. Decision

None of Provost's purported undisclosed "conflicts" would cause a reasonable person to conclude that the Arbitrator or Deloitte was partial to Intrafusion. Regarding the "personal relationship" between Yovovich and his family, and the Arbitrator and his family, the allegations do not include any plausible basis for concluding that Yovovich and the Arbitrator have ever met. Yovovich affirmed that he did not know and had never met the Arbitrator, and had never heard of him until he was selected to arbitrate this dispute. (D.I. 16-9 at 47). Provost's purported "personal conflicts" do not "powerfully suggest" any bias by the Arbitrator toward a man he has never met or the company he works for, or have any bearing on the arbitration.[2]

The remainder of Provost's purported conflicts attempt to generate bias out of Deloitte performing accounting services for, or former Deloitte employees working for, Lake Capital, a Lake Capital holding, Intrafusion, and other companies for which Yovovich was a director. Provost has not shown that the Arbitrator knew of these indirect business contacts. In fact, the evidence shows Yovovich has no direct business contacts with Deloitte. (D.I. 16-9 at 47). Yovovich never spoke to any of the Deloitte former employees about the arbitration. *Id.* at 49. Yovovich has not served on any of the suspect company boards since 2007, the year before Lake Capital invested in Intrafusion, and in each case Deloitte was retained before Yovovich joined

---

[2] It is worth noting that Yovovich's wife's employment at Touche Ross ended in 1981, eight years before Deloitte merged with Touche Ross. (D.I. 16-9 at 48).

6

the board. *Id.* at 47, 49, 50. Deloitte employs tens of thousands of people. *Id.* at 53. These indirect business contacts are to be expected based on Deloitte's large size and Yovovich's broad business involvement, and are too attenuated and trivial to create even an appearance of bias, much less a powerful suggestion of bias.

Finally, Provost attempts to generate bias out of Kirkland & Ellis, LLP's representation of Deloitte in unrelated matters, as Kirkland represented Respondent in the arbitration. The Kirkland attorneys involved in the arbitration have never performed any work for Deloitte, and Provost has not shown that the Arbitrator had any interactions with Kirkland. (D.I. 16-1 at 93). Provost also acknowledged that Kirkland might represent Deloitte when he signed the engagement letter, which provided that "counsel engaged by any of the parties . . . may have in the past represented or opposed, and may currently or in the future represent or oppose . . . Deloitte FAS and/or its affiliates or their respective counsel in matters unrelated to this engagement."[3] *Id.* at 99. There is no powerful suggestion of bias in other attorneys at Kirkland

---

[3]Intrafusion makes a strong argument that Provost waived his challenges to the Arbitrator's conflicts check and disclosures under 9 U.S.C. § 10. Provost failed to object to the selection of the Arbitrator. By signing the engagement letter, Provost indicated he understood that Deloitte had checked conflicts based on the names he provided, that Deloitte was under no obligation to update its conflicts search or identify other relationships or interests with the involved parties, and that counsel for the parties may represent Deloitte in unrelated matters. (D.I. 16-1 at 99). Provost agreed to these provisions and went forward with the arbitration. Only after he lost at arbitration did he raise Yovovich's name and present additional conflicts based on public information. If the Third Circuit were to cement its nonprecedential guidance on waiver of failure-to-disclose challenges to arbitration awards, Provost would likely have waived the challenges here. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 272 F. App'x 174, 176 n.4 (3d Cir. 2008); *Arco Enterprises, Inc. v. Operative Plasterers' & Cement Masons Int'l Ass'n*, 124 F. App'x 710, 713 (3d Cir. 2005); *e.g., Stone v. Bear, Stearns & Co., Inc.*, 872 F.Supp.2d 435, 454 (E.D. Pa. 2012). Because Provost's claims fail on the merits, this Court need not reach the waiver issue.

representing Deloitte generally in unrelated matters.

*In re Equimed, Inc.* is illustrative. *See* 2006 WL 1865011 (E.D. Pa. June 30, 2006). In that case, the arbitrator's former employer (PECO) had retained a party's counsel, the accountancy firm that employed one party's expert witness, and even one of the parties (Ernst and Young) to do some consulting work. None of these relationships were ongoing during the arbitrator's tenure in the matter. The Court found no appearance of bias by the arbitrator where there was nothing in the record to support a claim that the arbitrator had any substantial personal involvement in those dealings, noting it was not surprising that a company as large as PECO utilized E&Y and other similar firms and calling these relationships "remote and trivial." This Court reaches the same conclusions here.

Provost's request to conduct discovery into the asserted conflicts is also denied.[4] The relationships are so remote and trivial that no amount of discovery into them would generate any basis for vacating the award.

An appropriate order will be entered.

---

[4] Courts have been understandably hesitant to grant extensive discovery in cases alleging arbitrator bias where the complaining party has not presented clear evidence of any impropriety. In pursuing such an action, a disgruntled losing party can affect prolonged litigation and defeat the very purpose of contracting for arbitration in the first place. *See Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir. 1991) ("district court properly denied discovery request" where party "presented no evidence that the individual arbitrator had any financial or personal stake in the outcome"); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir. 1983) ("We do not want to encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary.").